**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| ACQIS LLC, A TEXAS LIMITED LIABILITY COMPANY; | § § | |
| *Plaintiff* | § § | **W-20-CV-00967-ADA** |
| | § | |
| -vs- | § § | |
| | § | |
| LENOVO GROUP LTD., A CHINA CORPORATION;  LENOVO PC HK LIMITED, A CHINA CORPORATION;  LCFC (HEFEI) ELECTRONICS TECHNOLOGY CO., LTD., A CHINA CORPORATION; LENOVO INTERNATIONAL INFORMATION PRODUCTS (SHENZHEN) CO. LTD., A CHINA CORPORATION;  LENOVO CENTRO TECHNOLOGICO S DE R.L. DE CV, A MEXICO CORPORATION; AND  LENOVO INFORMATION PRODUCTS (SHENZHEN) CO., LTD., | § § § § § § § § § § § § § | |
| *Defendants* | § | |

<u>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**</u>

Before the Court is Defendants'[1] Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (the "Motion"). ECF No. 29. Plaintiff ACQIS LLC ("Plaintiff" or "ACQIS") filed its Response. ECF No. 74. In turn, Defendants filed a Reply (ECF No. 79), Plaintiff a Sur-Reply (ECF No. 87), and Defendants a Sur-Sur-Reply (ECF No. 89). Plaintiff amended its complaint (ECF No. 58) pursuant to the parties' Stipulation to Amend the Complaint (ECF No. 57). Thereafter, Defendants renewed this Motion in order to encompass the new Defendant, LIPC, but included no other revisions. ECF No. 60. After a thorough review of all the briefs, relevant facts, and applicable law, the Court **GRANTS** Defendant LCFC, LIPC,

---

[1] Defendants include LCFC (Hefei) Electronics Technology Co., Ltd. (LCFC), Lenovo Information Products (Shenzhen) Co., Ltd. ("LIPC"), Lenovo Centro Tecnológico S. de R.L. de CV ("LCT"), Lenovo PC HK Limited ("PC HK"), and Lenovo Group Ltd. ("LGL") (collectively "Lenovo").

and LCT's Motion to Dismiss for Improper Service **AND DENIES** Defendant PC HK and LGL's Motion to Dismiss for Lack of Personal Jurisdiction.

## I.     BACKGROUND

Plaintiff ACQIS filed this lawsuit, alleging Defendants infringed and continue to infringe the following patents owned by ACQIS: U.S. Patent Nos. 9,529,768 ("'768 patent"), 9,703,750 ("'750 patent"), 8,756,359 ("'359 patent"), 8,626,977 ("'977 patent"), RE44,739 ("'739 patent"), 8,977,797 ("'797 patent"), 9,529,769 ("'769 patent"), RE45,140 ("'140 patent"), and RE44,654 ("'654 patent") (collectively, the "ACQIS Patents"). ACQIS also filed four related lawsuits against MiTAC Computing Technology Corporation, WIWYNN Corporation, ASUSTeK Computer, Inc., and Inventec Corporation[2] in this District. The ACQIS Patents relate to computer systems with CPUs coupled to low voltage differential signal (LVDS) channels that convey various types of data in a serial bit stream using pairs of unidirectional channels to convey the data in opposite directions. ECF No. 58 ¶ 36. ACQIS alleges that several of Lenovo's laptop computer products, desktop computer products, and computer server products infringe the ACQIS Patents (collectively the "Accused Products").

Plaintiff ACQIS is a limited liability company organized and existing under the laws of the State of Texas, with an office in the Northern District of Texas. ECF No. 58 ¶ 5. A related entity, ACQIS Technology, Inc., is organized under the laws of the state of Delaware with its principal place of business in Mountain View, California.

Plaintiff's Amended Complaint (ECF No. 58) further alleges that LGL is a Chinese company with its principal place of business in Hong Kong at 23rd Floor, Lincoln House, Taikoo

---

[2] *ACQIS LLC v. MiTAC Computing Technology Corporation*, 6-20-cv-00962-ADA; *ACQIS LLC v. Wistron Corporation et al.*, 6-20-cv-00968-ADA; *ACQIS LLC v. ASUSTeK Computer Inc.*, 6-20-cv-00966-ADA; and *ACQIS LLC v. Inventec Corporation*, 6-20-cv-00965-ADA.

Place, 979 King's Road, Quarry Bay, Hong Kong Island, Hong Kong S.A.R. *Id.* ¶ 6. PC HK is a wholly-owned subsidiary of LGL and a Chinese company with its principal place of business in Hong Kong at 23rd Floor, Lincoln House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong Island, Hong Kong S.A.R. *Id.* ¶ 7. LCFC is a wholly-owned subsidiary of LGL and a Chinese company with a manufacturing center at NO.1-3188, Yungu Road, Hefei Export Processing Zone, Anhui Province Hefei, China. *Id.* ¶ 8. LIPC is a Chinese company at 1/#1 Great Wall Technology Building Science & Industry Park, Nanshan District. Shenzhen, China 518057. *Id.* ¶ 9. Last, LCT is a Mexican company with its principal place of business at No. 316, Boulevard Escobedo Apodaca, Technology Park Apodaca, Nuevo Leon, P.O. 666000, México.

## II.     LEGAL STANDARD

### A.  Improper Service

Rule 4 of the Federal Rules of Civil Procedure governs service of process and the establishment of personal jurisdiction over foreign defendants. *See* Fed. R. Civ. P. 4(f), (h), (k). Personal jurisdiction is proper only where the state long-arm statute permits service on the defendant and the requirements of due process are satisfied. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006). In Texas, the long-arm statute extends to the limits of due process. "Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003).

### B.  Personal Jurisdiction

Federal Circuit law governs personal jurisdiction where "a patent question exists." *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). In the present case,

general jurisdiction is not at issue. Therefore, this Court will proceed with its evaluation regarding specific jurisdiction. "[W]hether a defendant is subject to specific personal jurisdiction in the forum state involves two inquiries: first, whether the forum state's long-arm statute permits service of process and, second, whether the assertion of jurisdiction is consistent with due process." *Id*. "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co*., 921 F.3d 522, 539 (5th Cir. 2019) (citations omitted).

To satisfy due process, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "The Federal Circuit applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 636 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff bears the burden to show that the defendant has minimum contacts with the forum under the first two prongs. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). Upon a showing of minimum contacts, the defendant bears the burden to prove unreasonableness. *Id.*

"When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). "To make that showing, [the plaintiff] need only demonstrate facts that, if true, would

support jurisdiction over the Defendants." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). "Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id.*

## III.    DISCUSSION

### A. Improper Service

Defendants LCFC, LIPC, and LCT argue that this Court lacks jurisdiction over them because they were not properly served. ECF No. 29 at 17. The parties do not dispute the facts, only the interpretation of what constitutes proper service. ACQIS states that service was proper and validly completed *in Texas* when process was received by the Secretary of State. ECF No. 74 at 19. According to ACQIS, because service was complete in Texas *before* any documents were mailed to China or Mexico, any arguments regarding objections to foreign service by mail under the Hague Convention are meritless. *Id.* LCFC, LIPC, and LCT counter that the Hague Convention applies because the Secretary of State sends the notice of service of process via mail. ECF No. 29 at 17–18. Mexico and China have objected to service via mail. *Id.* Therefore, per Defendants, ACQIS's service through the Texas Secretary of State is insufficient. *Id.*

The outstanding question is relatively straightforward: was service complete upon Defendants when process was received by the Texas Secretary of State, or when process was forwarded to Defendants in China and Mexico? If service was complete under the former, the Hague Service Convention would not apply and service would be proper. If, however, service was not complete until the documents were forwarded to the defendants, service would be

improper because Defendants received service via mail in countries that object to mail service as signatories to the Hague Service Convention.

The Supreme Court addressed a similar question in *Volkswagenwerk Aktiengesellschaft v. Schlunk*, holding that the Hague Service Convention did not apply where "service on a domestic agent is valid and complete under both state law and the Due Process Clause." 486 U.S. 694, 707 (1988). The Supreme Court reasoned that any internal, private communications between the agent and foreign principal, the mailing of the service documents, were beyond the scope of the case because service was complete when the subsidiary agent was served. *Id.* According to the Supreme Court, the Hague Service Convention is only triggered when "a transmittal abroad [] is required as a necessary part of service." *Id.* Furthermore, "the Due Process Clause does not require an official transmittal of documents abroad every time there is service on a foreign national." *Id.*

The Supreme Court dedicated a significant portion of its opinion discussing *notification au parquet*, "service of process on a foreign defendant by the deposit of documents with a designated local official." *Id.* at 703. As noted in the opinion, the Conference wanted to eliminate *notification au parquet*. *Id.* However, the final report was rather ambiguous regarding wither foreign laws authorizing *notification au parquet* fell within the meaning of the Hague Service Convention. *Id.* at 704. Following the Supreme Court's inclination, the Hague Service Convention would apply. *Id.* ("[The final report] says that, although the strict language of Article 1 might raise a question as to whether the convention regulates *notification au parquet*, the understanding of the drafting Commission, based on the debates, is that the Convention would apply."). Yet, such analysis was dictum.

> Although this statement might affect our decision as to whether the convention applies to *notification au parquet*, <u>an issue we do not</u>

> resolve today, there is no comparable evidence in the negotiating
> history that the Convention was meant to apply to substituted
> service on a subsidiary like VWoA, which clearly does not require
> service abroad under the forum's internal law.

*Id.* (underlined emphasis added).

Notably, the Supreme Court distinguished substituted service on a subsidiary from *notification au parquet*, or service on a designated local official. The distinction matters, particularly with regard to a defendant's due process. Foreign entities are protected because they will either receive personal service, likely triggering the Hague Service Convention, or substituted service that provides sufficient notice supported by the Due Process Clause. *Id.* at 705. This Court believes the distinction between service on a local official, such as a Secretary of State, and service on a subsidiary raises questions of Due Process that enhance the importance of the distinction marked by the Supreme Court in its opinion. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Ultimately, absent mailing the service abroad, Defendants would not be on notice of the pendency of the action from the Texas Secretary of State. Conversely, a subsidiary can easily provide notice to its foreign principal regarding a pending lawsuit without mailing documents abroad. The Texas Secretary of State and local subsidiaries may both be involuntary agents for foreign entities for service of process, yet their relationships to a foreign defendant are remarkably different.

In *Schlunk*, the foreign defendant argued that, as a practical matter, the domestic subsidiary was certain to notify the foreign principal by transmitting the complaint to Germany, implicating the Hague Service Convention. *Schlunk*, 486 at 706–07. As emphasized by the

7

foreign defendant, the appellate court upheld service having determined the relationship between the foreign principal and local subsidiary was close enough such that the foreign principal was fully apprised of the lawsuit against it. *Id.* Indeed, as argued by the foreign defendant, the subsidiary had to provide notice to the foreign principal to meet the minimum requirement of due process. *Id.* at 707. Therefore, an "occasion to transmit a judicial . . . document for service abroad" would occur in every case involving foreign defendants, thereby implicating the Hague Service Convention. The Supreme Court rejected that argument, stating:

> Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the convention has no further implications. Whatever internal, private communications take place between the agent and a foreign principal are beyond the concerns of this case. The only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service.

*Id.* ACQIS cites to *West v. Velo Enter. Co., Ltd.*, which relies on the latter portion of this very paragraph for support, but that support is out of context in this case. *See* ECF No. 74 at 19. First, under Illinois state law, the plaintiff could serve the foreign principal by substituted service on the domestic subsidiary without sending documents to Germany. Second, the agent referenced and at issue in the Supreme Court's holding was the foreign principal's subsidiary, not the Texas Secretary of State. Third, as discussed earlier, the Supreme Court already hinted at its inclination that the Hague Service Convention would apply to *notification au parquet*, or service on the Texas Secretary of State. Therefore, it cannot be said that *Schlunk* stands for the proposition that service on the Secretary of State would end the inquiry and that any communications between the secretary of state and foreign entity are beyond  the Hague Service Convention.

*West* presents materially different facts. *See West v. Velo Enter. Co., Ltd.*, No. 5:13-cv-00024, 2013 WL 12086781 (W.D. Tex. May 22, 2017). The two countries at issue were Taiwan

and Italy. *See id.* Taiwan is not a signatory to the Hague Convention, and Italy does not object to service by mail.[3] Here, both China and Mexico object to service by mail.[4] Therefore, any mail service required by statute is preempted by the Hague Service Convention. Plaintiff further points to *West* to show that the Texas Secretary of State is an agent to receive process, not serve it. 2013 WL 12086781, at *4. Accordingly, even if a copy must be forwarded, the Texas long-arm "statute does not require formal delivery of documents abroad as a necessary part of service of process." *Id.* At the time, the court was operating under the law of the Fifth Circuit which held that service by international mail to signatories of the Hague Service Convention was not allowed. *See Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 384 (5th Cir. 2002). But that holding has since been overruled by the Supreme Court. *See Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017). Thus, *West* represented that service on a foreign company was complete once received by the Secretary of State to avoid triggering since overruled Fifth Circuit precedent that any mail service, even to countries that do not object to Article 10 of the Hague Service Convention, was improper. Delivery abroad, formal or not, does impact the instant case because both countries have objected to service by mail.

Admittedly, courts have struggled to determine when substituted service is complete upon the Secretary of State and whether the Hague Service Convention applies. *Compare Int'l Trans., Ltd. v. Embotelladora Agral Regionmontana SA de CV*, 277 F. Supp. 2d 654 (N.D. Tex. 2002) (holding substitute service on secretary of state was permissible under Hague Service Convention to serve Mexican corporations), *and Shackelford v. Cartercopters, LLC*, No. 02-10-

---

[3] U.S. Department of State, <u>Judicial Assistance Country Information</u>, Hague/Inter-American: Italy, (Nov. 16, 2021), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Italy.html.
[4] U.S. Department of State, <u>Judicial Assistance Country Information</u>, Hague/Inter-American: China, (Nov. 16, 2021), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html; U.S. Department of State, <u>Judicial Assistance Country Information</u>, Hague/Inter-American: Mexico, (Nov. 16, 2021), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Mexico.html.

00414-CV, 2011 Tex. App. LEXIS 7150, at *9 (Tex. App.—Fort Worth Aug. 31, 2011) ("Service is normally complete upon receipt by the secretary of state."), *with Paradigm Entm't, Inc. v. Video System Co., Ltd.*, No. 3:99-cv-2004P, 2000 WL 251731, at *4 (N.D. Tex. March 3, 2000) ("Properly read, the Texas statute allows the secretary of state to serve as a defendant's agent for service of process *provided that* he forwards the service to the defendant as required by the statute….Because Texas law requires that documents be transmitted to Japan in order to complete service of process upon Defendant, the Hague Convention applies.") (emphasis in original), *and Axford Consulting, L.P. v. Foster Jordan, LLC*, No. H-09-1899, 2009 WL 10711347, at *9 (S.D. Tex. Sept. 24, 2009) ("Second, as a treaty signed by the United States, the Hague Convention takes precedence over the Texas long-arm statute. Thus, even if the service of process were sufficient under the Texas long-arm statute, it would still be insufficient for failure to comply with the requirements of the Hague Convention.") (citations omitted), *and Alt. Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co.*, No. SA05CA0172-XR, 2005 WL 1862631, at *2 (W.D. Tex. July 8, 2005) ("Thus, service via the Texas Secretary of State is insufficient because it requires service by mail, which fails to comply with the Hague Convention under Fifth Circuit law.").

This Court reads the Texas service statutes to require the Secretary of State to mail the service to the foreign entity, for which it is an involuntary agent, implicating the Hague Service Convention. *See* Tex. Civ. Prac. & Rem. Code § 17.044 ("The secretary of state is an agent for service of process or complaint on a nonresident…"); Tex. Civ. Prac. & Rem. Code § 17.045 ((a) "shall immediately mail a copy of the process to the nonresident"; (b) "he shall immediately mail a copy of the process to the nonresident"; (c) "a copy of the process and notice of the service must be immediately mailed to the nonresident"; (d) "The process or notice must be sent

10

by registered mail or by certified mail, return receipt requested."; (e) shall immediately mail a copy of the process to the person"). The Hague Service Convention itself does not prohibit such a form of service. *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *done* Nov. 15, 1965, 20 U.S.T. 361, 363;[5] *see also Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017) ("as long as the receiving state does not object, the Convention" does not interfere with serving documents through postal channels). However, when a signatory to the Hague Service Convention objects to Article 10, mail service is inappropriate. *Water Splash*, 137 S. Ct. at 1513.[6] Here, because the Texas statutes require the Secretary of State to mail service to the defendant abroad, the Hague Service Convention preempts the Texas statute and substituted service is improper.

Furthermore, it would be absurd to find that any communications between the *secretary of state* and foreign defendant are irrelevant after the *secretary of state* received process. *See generally Schlunk*, 486 U.S. at 707 (discussing valid service on a domestic agent when state law and the Due Process Clause are met). Under Texas law, the Secretary of State is required to immediately mail a copy of the notice of service to the foreign entity, affording the defendant of

---

[5] Article 10 of the Hague Convention states:

> "Provided the State of destination does not object, the present Convention shall not interfere with -
> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
> (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
> (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination."

[6] "In short, the traditional tools of treaty interpretation unmistakably demonstrate that Article 10(a) encompasses service by mail. To be clear, this does not mean that the Convention affirmatively *authorizes* service by mail. Article 10(a) simply provides that, <u>as long as the receiving state does not object</u>, the Convention does not 'interfere with ... the freedom' to serve documents through postal channels. In other words, in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." (italics in original) (underlined emphasis added).

its due process. Absent that final action, as dictated by the statute, a defendant would be unaware of the action against it. Such a proposition cannot meet the demands of the Due Process Clause, given these facts. The Court concludes that service of process on Defendants LCFC, LIPC, and LCT was insufficient. Therefore, Defendants LCFC, LIPC, and LCT's Motion to Dismiss for Lack of Proper Service is **GRANTED**.

## B. Personal Jurisdiction

Remaining Defendants PC HK and LGL assert that they should be dismissed for lack of personal jurisdiction. ECF No. 29 at 6. Specifically, Defendant asserts that LGL does not manufacture or distribute products for sale in the United States and PC HK has not directed any activities toward the state of Texas. *Id.* Plaintiff contends that LGL acts "in consort" with affiliates, specifically PC HK and Lenovo (United States), Inc. ("Lenovo US") to reach the United States market. ECF No. 74 at 10, 12. Lenovo US is not a named defendant in this case. The Court will address each of the remaining named Defendants in turn.

The Court first considers whether Plaintiff ACQIS has shown that Defendant PC HK has "purposefully availed [itself] of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). To determine whether there are "minimum contacts," the Court must "inquire whether the defendant has 'purposefully directed his activities' at the forum state and, if so, whether the 'litigation results from alleged injuries that arise out of or relate to those activities.'" *Breckenridge Pharm.*, 444 F.3d at 1361–62. "Purposeful availment" is the key element that ACQIS must establish. *Hanson v. Denckla*, 457 U.S. 235, 253 (1958).

### a.  PC HK

ACQIS alleges that PC HK acts in consort with manufacturers, contracting for nationwide distribution of Accused Products, including in Texas. ECF No. 74 at 10. Specifically, AQCIS argues that PC HK directs other defendants to direct shipments to Texas and PC HK derives substantial revenue and profit from those shipments. *Id.* ACQIS points to PC HK's Distribution Agreement with Lenovo (US), which references distribution to the "Territory" defined as the United States. *Id.* at 11; ECF No. 74-7. Last, ACQIS states that the $4 billion in revenue and $518 million in profit for PC HK from Accused Products sold in the United States is evidence of personal jurisdiction. *Id.* at 12.

PC HK suggests that it has not purposefully directed its activities at residents of Texas. ECF No. 29 at 11. Rather, PC HK is "a worldwide distributor that has a distribution agreement with Lenovo (United States) Inc. that covers the entire United States market." *Id.* And, Lenovo US exercises discretion over how its products are distributed in the market. Therefore, PC HK does nothing more than sell products to Lenovo US and engages in no purposeful activity directed at Texas. *Id.* at 12. PC HK further argues that ACQIS's claim does not arise out of or relate to PC HK's activities in Texas. In particular, "ACQIS asserts patent infringement that arises out of sales and importation of Lenovo computers, but none of the defendants sell or import Lenovo computers in Texas." *Id.* Instead, the sales of Lenovo computers come from Lenovo US. Last, asserting personal jurisdiction over PC HK would be unfair because it would reward ACQIS's attempt to forum shop. *Id.* ACQIS filed suit against six foreign Lenovo defendants, but failed to name Lenovo US as a defendant, the company that actually imports and sells the allegedly infringing Lenovo products. According to PC HK, ACQIS's suit in this District absent Lenovo US is an end-run around venue rules, seeking to place foreign defendants

in this Court that have no connection to Texas. Instead, ACQIS could file suit in North Carolina where Lenovo US maintains its headquarters and fulfillment center, and where PC HK has ties via its distribution agreement with Lenovo US. *Id.* at 13.

First, the Court must identify whether PC HK had minimum contacts with the forum. PC HK entered a Distribution Agreement (ECF No. 74-7) wherein, as a supplier, it provided the Accused Products to Lenovo US, the distributor, for sale to customers in a defined United States territory. Therefore, pursuant to the Distribution Agreement, PC HK no doubt knew that its products would be sold across the United States and presumably in the State of Texas. To support its position, ACQIS presents Forrest Tahdooahnippah's declaration, in which he states: "Of the import records produced, 617 showed direct shipment of products to Texas. Many of these documents had incomplete information, but 555 documents listed either a shipper or manufacturer. Of these documents, the reviewers totaled the number of products sent to Texas by each shipper or manufacturer." ECF No. 74-1 ¶ 16. After parsing the records, Mr. Tahdooahnippah surmises that PC HK shipped 14,083 products directly to Texas. *Id.*

PC HK counters with its own declarant, Mok Chung Fu Eric, who states that PC HK does not manufacture, sell, offer for sale, use, or import any Lenovo products into the United States since at least January 1, 2014. ECF No. 29-9 ¶ 8. But, PC HK argues that PC HK would be subject to personal jurisdiction in North Carolina via the Distribution Agreement between PC HK and Lenovo US.

Contrary to PC HK's assertions, "rather than seeking to identify the state with which defendant has the most substantial contacts related to the cause of action, the pertinent analysis concerns whether a defendant has sufficient minimum contacts with plaintiff's chosen forum such that prosecution of the action in that state will not offend traditional notions of fair play and

substantial justice." *Cargill Cocoa & Chocolate, Inc. v. ABCO Labs., Inc.*, 2014 U.S. Dist. LEXIS 136559, *4–5 (E.D. Pa. Sept. 25, 2014). As further noted by the Federal Circuit in *Beverly Hills*, the Supreme Court commented on a defendant's purposeful shipment of a product through an established distribution channel in the *World-Wide Volkswagen* opinion:

> 'If the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the [defendant] to serve, directly or indirectly, the market for its product . . ., it is not unreasonable to subject it to suit.' And, 'the forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'

*Beverly Hills Fan. Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565–66 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Viewing the facts in the light most favorable to the non-movant, the Court finds that PC HK maintains sufficient minimum contacts with Texas via the products shipped to Texas, and the profits derived from said shipments. *See* ECF No. 74-8, 74-9, 74-13.

As a result of contracting with Lenovo US to supply products for sale in the United States, PC HK could have expected that this lawsuit would be brought into court in the states where Lenovo products are sold. Texas is clearly a destination wherein the products were expected to be sold. *See ICON Health & Fitness, Inc. v. Horizon Fitnees, Inc.*, 2009 U.S. Dist. LEXIS 34767, at *41–42 (E.D. Tex. Mar. 26, 2009) (finding jurisdiction over manufacturer even though subsidiaries imported products into the United States when manufacturer placed products into the stream of commerce with the expectation they would be distributed throughout the United States, including in Texas); *LG Elecs., Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 419–20 (E.D. Va. 2000) (finding personal jurisdiction because manufacturer supplied goods to

its United States subsidiary with the presumed knowledge the products would arrive in the forum state); *Fluke Corp. v. Fine Instruments Corp.*, 1994 U.S. Dist. LEXIS 16286, at *6 (W.D. Wash. Oct. 5, 1994) ("The court may make the reasonable inference that the sale of a large number of devices to a firm with a nationwide distribution network will generally result in the sale—or at least the use—of one of those devices in the forum state."). PC HK's revenue and profit figures during the past two years sufficiently illustrate an extensive distribution network throughout the United States, including in Texas. Certainly, Plaintiff's claims arise out of these minimum contacts.

Notwithstanding PC HK's minimum contacts with Texas, Defendant PC HK is afforded additional due process protection to ensure fair play and substantial justice. *See Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d at 1350 (stating that upon a showing of minimum contacts, the defendant bears the burden to prove unreasonableness). "In other words, even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *Beverly Hills,* 21 F.3d at 1568.

Relevant factors include: (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1331 (Fed. Cir. 2008). "In general, these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they

are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."
*Beverly Hills*, 21 F.3d at 1568.

The instant case is not one of the rare cases. Texas has an interest in discouraging injuries that occur within the state. Furthermore, Plaintiff ACQIS sued several other defendants regarding the same patents with significant overlap, and this forum will allow for a single resolution of all outstanding legal and factual issues. PC HK's burden does not appear to be enough to sufficiently outweigh ACQIS's interest in adjudicating this dispute. Given technological advances and accommodations, particularly in the past couple of years, "defense of a lawsuit in a foreign tribunal [has become] less burdensome." *Beverly Hills*, 21 F.3d at 1569 (quoting *World-Wide Volkswagen*, 444 U.S. at 294). This Court is of the opinion that exercising personal jurisdiction over PC HK is reasonable and fair.

Accordingly, PC HK's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.

### b. *LGL*

LGL need only have minimum contacts with the United States as a whole, rather than Texas alone, as it does not identify any other forum in the United States in which it would be subject to personal jurisdiction. ECF No. 74 at 12. *See* Fed. R. Civ. P. 4(k)(2); *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012); *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018). LGL's alleged minimum contacts with the United States include: (1) acting in consort with other Defendants to deliver products into the United States market under a stream of commerce theory, and (2) imputable contacts by other Lenovo defendants, including PC HK, because they serve as LGL's distribution agents. *Id.*

**1.**  Acting in consort with other Defendants under a stream of commerce theory

To support its allegations that LGL acts in consort with other defendants in placing the Accused Products in the stream of commerce, ACQIS states the following: LGL entered the United States market in 2005, acquiring the PC division of IBM (ECF No. 74 at 13); LGL acquired PC HK from IBM and had it specifically target the United States for distribution; LGL caused PC HK and Lenovo (US) to enter into a contract for the nationwide distribution of Lenovo products; PC HK has no employees that can perform the contract; the consorted action between LGL and its subsidiaries eliminates any practical distinction between them to the extent they operate as a single entity called the "Lenovo Group"; and the website insinuates the Lenovo Group is a single company. Ultimately, LGL is not a mere holding company—"it manages and directs the conduct of its subsidiaries, including their conduct in and aimed at the United States." ECF No. 74 at 14.

Defendant LGL counters that LGL is a holding company that does not play a role in the allegedly infringing activity in the United States. ECF No. 29 at 8. LGL points out that ACQIS simply attempts to blur corporate distinctions to create a stream of commerce theory and that ACQIS's evidence does not support its assertions that LGL acts in consort with the other defendants. ECC No. 79 at 2–3. For example, Mr. Glendinning was a treasurer in "the Lenovo Group," not LGL. *Id.* at 3. Similarly, Lenovo's procurement department is run by Guan Wei, who is not the "Chief Operating Officer of LGL," nor an LGL employee. *Id.*

ACQIS's "in consort" argument stems from the *Beverly Hills* decision out of the Federal Circuit. 21 F.3d at 1566 ("plaintiff has stated all of the necessary ingredients for an exercise of jurisdiction consonant with due process: defendants, *acting in consort*, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and

connections with the forum state were such that they should reasonably have anticipated being brought into court there") (emphasis added). Applying that language, the Court agrees that LGL acts in consort with other defendants under a stream of commerce theory.

Specifically, ACQIS alleges that LGL purchased PC HK in order to enter the United States market. ECF No. 75-1 at 6; ECF No. 74-2 at 12 (Q: "Is that what caused Lenovo to enter the U.S. market or was there some other reason in 2005?" . . . A: I believe this is the reason. I don't know of any other reasons."). The Distribution Agreement provides further evidence that LGL targeted the United States as a whole. Per the Distribution Agreement between PC HK and Lenovo US, both PC HK and Lenovo US belong to a group of companies, the "Lenovo Group," that is owned, directly or indirectly, by LGL. ECF No. 74-7 at 1. "The Lenovo Group is involved in the manufacture, sale, and distribution of [the Accused Products]" in the United States. *Id.* It is certainly reasonable to find that PC HK and Lenovo US, acting at the behest of the Lenovo Group owned by LGL, contracted to target the United States market. And, given the factual dispute regarding who signed the Distribution Agreement and their relevant capacities, the Court finds it must construe the dispute in favor of ACQIS.

In sum, the Court disagrees with LGL and finds ACQIS provided sufficient evidence to support LGL's contacts and purposeful availment towards the United States. *See Energy Transp. Group, Inc. v. William Demant Holding A/S*, 2008 U.S. Dist. LEXIS 845, at *13 (D. Del. Jan. 4, 2008) (concluding the plaintiff stated the necessary ingredients for an exercise of jurisdiction over defendant, including defendant "acted in consort with its subsidiaries to place the accused products in the stream of commerce [and] it knew that the accused products foreseeably would be sold in the United States"); *Oakley Inc. v. Jofa AB*, 287 F. Supp. 2d 1111, 1116–17 (C.D. Cal. 2003) (finding purposeful direction where defendant knew that the accused product would be

19

sold in the forum state, acted in concert with other defendants to place the product in the stream of commerce, and should have reasonably anticipated being brought into court in the forum state).

LGL cites to *Nuance Communications*, arguing that ACQIS misconstrues it because the Federal Circuit stated it could not, on the record before it, determine if the defendant purposefully availed itself in the forum state and whether the claims arose out of those activities. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010). However, the Federal Circuit remanded the case for discovery to answer those very questions: (1) whether the parent received any revenue from the forum, and (2) to identify evidence about the control the parent asserted in establishing a distribution channel in the United States. *Id.* at 1235–36. Thus, receiving revenue from Texas and exercising control in establishing a distribution channel are likely sufficient to meet the demands of due process. ACQIS sufficiently met those demands.

## 2.   Purposeful contacts by other Lenovo defendants are imputable to LGL

Alternatively, ACQIS argues that LGL is subject to personal jurisdiction due to the conduct of its distribution agents in the United States. ECF No. 74 at 15. *See Cephalon, Inc. v. Watson Pharm., Inc.*, 629 F. Supp. 2d 338, 348 (D. Del. 2009) ("This theory does not treat the parent and subsidiary as one entity, but rather attributes specific acts to the parent because of the parent's authorization of those acts."). Under this method of personal jurisdiction, ACQIS alleges: LGL created Lenovo (US) to distribute products in the United States, including using its own officer to execute the contract; if LGL did not have PC HK and Lenovo (US), it would directly engage in the distribution of the products itself; LGL and PC HK are the same because PC HK has no employees; LGL holds out to investors that North America is the single largest

geographic segment of its annual revenue; revenue for PC HK is transferred to LGL as part of a "service income fee"; and Lenovo (US) is not independent of LGL, but a member of the Lenovo Group and a subsidiary of LGL.

In response, LGL argues that ACQIS's theory rests on conclusory allegations and that ACQIS cannot identify clear evidence necessary to rebut a presumption of institutional independence. ECF No. 79 at 4–5. Furthermore, LGL's actions are typical of a corporate parent that oversees the strategy of an overall group. *Id.* at 5. Simply put, LGL argues that ACQIS cannot justify departing from controlling law rejecting personal jurisdiction over a parent based on actions of subsidiaries. *Id.* at 6.

ACQIS alleges that LGL created an entire subsidiary—Lenovo US—to distribute products in the United States. ECF No. 74 at 16. As evidence, ACQIS provides a deposition transcript that indicates PC HK never had a treasurer, despite one Damian Glendinning's signature as treasurer of PC HK. ACQIS maintains this is evidence that LGL's treasurer executed the Distribution Agreement for PC HK. In response, LGL cites to two annual reports (ECF No. 79-5, 79-7), but neither report contains Damian Glendinning's name. As such, a factual dispute remains regarding whether LGL executed a contract for PC HK. Viewing these facts in the light most favorable to the non-movant, the Court finds that LGL's control over PC HK and Lenovo US to establish, direct, and act as distribution agents in the United States creates sufficient minimum contacts.

In sum, this Court finds that personal jurisdiction is met under either of Plaintiff's arguments. Furthermore, Plaintiff's claims arise out of LGL's activities with the United States, namely distribution and sales of the Accused Products. Similar to PC HK, the Court does not find that this is a rare case. Instead, this Court finds that the exercise of personal jurisdiction over

LGL is both reasonable and fair. LGL's Motion to Dismiss for Lack of Personal Jurisdiction is similarly **DENIED**.

### C. Failure to state a claim

The Court withholds ruling on Defendants' arguments urging this Court to dismiss ACQIS's claims of direct infringement, as it will address such remaining arguments in its forthcoming order on Defendants' Motion to Dismiss Plaintiff's Claims for Indirect Infringement, Willful Infringement, and Enhanced Damages (ECF No. 30).

## IV.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant LCFC (Hefei) Electronics Technology Co., Ltd. (LCFC), Lenovo Information Products (Shenzhen) Co., Ltd. ("LIPC"), Lenovo Centro Tecnológico S. de R.L. de CV ("LCT")'s Motion to Dismiss for Improper Service is **GRANTED. IT IS FURTHER ORDERED** that Defendant Lenovo PC HK Limited ("PC HK"), and Lenovo Group Ltd. ("LGL")'s Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.

SIGNED this 16th day of November, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE